UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BONNIE THOMPSON | : | CIVIL ACTION NO.: 08-125 |
| VERSUS | : | JUDGE JAMES T. TRIMBLE, JR. |
| GATEHOUSE MEDIA LOUISIANA HOLDINGS, INC. and NEWSLEADER, INC. d/b/a BEAUREGARD DAILY NEWS | : | MAG. JUDGE KATHLEEN KAY |

## **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT**:

The Court has set for hearing the Federal Rule of Civil Procedure, Rule 56(c) motion for Summary Judgment brought by the defendants on the issue of liability.

The Court has calendared the motion for October 8, 2008, without oral argument.

### **STATEMENT OF MATERIAL FACTS**

As alleged by the defendants, the following facts are not in dispute:

1.

Bonnie Thompson is a former employee of Beauregard Daily News.

2.

For approximately ten (10) years prior to her injury, " the layout of the building and the parking lot has not changed ...". However, the property has deteriorated.

3.

On January 5, 2007, Bonnie Thompson, in fact, had dropped off at the defendant's property, advertisement materials.

4.

The remainder of the alleged "undisputed material facts" are, in fact, disputed.

5.

Instead, Bonnie Thompson alleges in a countervailing affidavit, attached as Exhibit "A", the following:

"That the scene of the accident depicted in defendants' "Exhibit C-4" of defendants' safety expert's report is incorrect as it is a few feet to the East of where she landed after she tripped.

That she landed in the area directly behind the black vehicle shown in "Exhibit C-4", which was a few feet away from the actual hole that caused her accident.

That the area shown in "Exhibit C-4" shows a portion of the area where she landed after she tripped, rather than the actual area where she tripped, and does not show the actual hole where she tripped.

That the area where she tripped does hold water and makes puddles when it rains and the puddles are not depicted in "Exhibit C-4".

That to her knowledge, Peggy Waldrup witnessed filler material after the accident which was actually used and filled in the hole where she actually fell. Accordingly, it would have been impossible for the defendants' expert to have done a critical analysis of the accident site because of material alterations and safety changes made after the fact".

Furthermore, Bonnie Thompson shows that she propounded discovery to the defendants that pertained to the issues of liability, diversity, and insurance coverage.

The plaintiff propounded interrogatories to the defendant on April 3, 2008, which are attached as Exhibit "B".

On June 2, 2008, the defendants answered these interrogatories.

While Interrogatory No. 3 asked for the identity of all persons that were responsible for the regular inspection, maintenance and upkeep of the parking lot where the accident happened, the defendant simply describes the paper's manager as the person responsible.

Furthermore, there is no evidence to establish that in the years preceding the incident that gave rise to this litigation, that the defendants, individually, or through some contractor, performed any type of inspection or maintenance of the property so as to avoid the injury sustained herein.

Instead, as is shown in the plaintiff's affidavit, the property had actually deteriorated to the point where water would pool on the surface of the parking lot during rainstorms, and the collection of the pooling water would hide a break in the expansion joint at the point where she tripped, and that "the broken concrete surrounding the fractures in the expansion joint to be about the size of a gila monster", a picture of which is attached as Exhibit "C". The area where the claim "expert" performed his critical care analysis was both in the wrong location, and after material changes were made to the area where the plaintiff actually fell.

Since the defendants' Motion for Summary Judgment is based on data that is wholly and completely inaccurate, based on an inspection of a site where this accident never occurred, the Motion for Summary Judgment is erroneously brought.

Had the defendants intended to have an inspection of the accident site, the presence of the plaintiff to show exactly where the accident occurred was apparently mandatory. Unfortunately, this never happened.

**LAW AND ARGUMENT**

    A.    Motion for Summary Judgment Standard

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. RULE CIV. P. 56(c); *Celotex Corp. V. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for one or more elements essential to the non-moving party's case. *Celotex*, 477 U.S. at 322.

A genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d. 202 (1986). In making this assessment, the court must consider the non-moving party's evidence to be true and must draw all justifiable inferences in favor of that party. *Id.* at 255. Nevertheless, when a motion for summary judgment is properly supported, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleadings" and can avoid summary judgment only by setting forth "specific facts showing that there is a genuine issue for trial." Fed. Rule Civ. P. 56(e). Mere conclusory allegations are not competent summary judgment evidence. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Nor are unsubstantiated assertions,

improbable inferences, and unsupported speculation, *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

On the other hand, when the defendant brings a Motion for Summary Judgment based on fallacious data after inspecting the wrong section of the property in question, a Motion for Summary Judgment could never be granted.

## PROPERTY OWNER LIABILITY IN LOUISIANA

In captions used by the defendants in this case, the issue of liability was listed as "merchant liability", attempting to compare more strict assessments of liability to that of a "merchant" like Wal-Mart instead of a general commercial property owner. This analogy is misplaced. Unlike the liability of a "merchant" who has the benefit of being protected by certain specific "merchant liability limitations" such as the obligation of a plaintiff proving that the defendant "knew or should have known" of a particular spill or hazard but failed to take appropriate measures to address such hazards, such is not the case here.

In fact, by all indications, the hazard that resulted in the injury to Bonnie Thompson would have been a material breakdown of the property where the concrete broke over years because of the failure of an expansion joint, and the failure on the part of the property owner to conduct regular maintenance and inspection to the property. Therefore, to attempt to analogize liability here in the facts of this case to that of a claim against Wal-Mart is misplaced.

However, the defendant is correct that the court should look to Louisiana law in this case of diversity as the court would be "***Erie bound***" to finding applicable law for premises liability in this case.

Instead of some broad limitation of liability stemming from merchant laws, the courts in Louisiana have looked at parking lot accidents from the standpoint of the general civil torts

obligations found in the Louisiana Civil Code, chapter 3, **"OF OFFENSES AND QUASI OFFENSES"**.

Louisiana Civil Code Article 2315 provides " every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

Civil Code Article 2316 solidifies this thought process remarking "every person is responsible for the damage he occasions not merely by his act, but by his negligence, imprudence, or his want of skill."

Civil Code Article 2317 obliges a defendant as follows: " We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or **the things which we have in our custody**." This, however, is to be understood with the following modifications.

At the heart of the issue of liability in this case is Civil Code Article 2317.1. It reads as follows:

> "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have know of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case."

In none of the cases that the defendant cites or which research has or will reveal is there a single instance where the defendant offers safety expert testimony based on an inspection of the wrong area of a parking lot or sidewalk where an accident happened.

However, many cases have dealt with the issue from a broad and general standpoint. And, had the defendants evaluated the correct area of the parking lot where this accident happened, all decisions would lead to the conclusion that a Motion for Summary Judgment is inappropriate.

First, we would offer the court the decision of *Bouquard v. Winn Dixie*, 900 So.2d 131 (La. App. 5th Cir. 2005). In that case, the District Court granted summary judgment in favor of the defendant in a trip-and-fall case involving a cracked expansion joint. The facts were set out as follows:

> "The plaintiff testified that on the day of her accident, she went to Winn Dixie intending to cash a check. She parked her car in a no-parking zone in front and went into the store with her checkbook. While in the store, she realized that she needed her license and exited the store to go back to her vehicle to retrieve the license. She was walking a little fast, not a regular pace, when she suddenly fell to the ground. When she fell, she dropped her checkbook and her shoe came off.
>
> The plaintiff stated that prior to the accident she did not see anything that caused her to fall. However, she visited the store a day or two later with an investigator from her attorney's office. They concluded the area of the fall was near her vehicle parked in the no-parking zone and that her fall was caused by the expansion joint between the concrete sections outside the store.
>
> The plaintiff admitted that she was 'blurred' at the time of the fall and could not recall her shoe getting caught in the joint. She also admitted that she had no knowledge at the time of the fall as to what caused it and that she surmised what had caused the accident after visiting the scene with the investigator."

The court also had before it the Affidavit of the store's co-manager. As to his observations, the court noted as follows:

> "Stretzinger stated that he had been employed at the Winn Dixie location for a number of years as a co-manager; that he investigated the accident involving the plaintiff; that at the time of the accident there was no debris in the area, nor was there any cracked concrete. He described the expansion joint as being one inch wide where it separates the different concrete sections. He also said there had been no other falls in that area during his employment." (*Bouquard* at Pg. 133).

In opposing the Motion for Summary Judgment, the plaintiff described the expansion joint where her accident occurred as being hazardous as follows:

> "The plaintiff said her shoe was wedged in a 'piece of cement where it should have been filled with either tar or wood ... the walkway walking out of the Winn Dixie". Asked why she thought it should have been filled with tar or wood, the plaintiff replied that it was filled with wood, but where the part of her heel got caught wasn't filled. She estimated the

unfilled area about "one foot long and approximately an inch deep." (*Bouquard* at Pg. 134).

Citing the aforementioned Civil Code articles, the court reversed the granting of a Motion for Summary Judgment holding as follows:

" In determining whether a defect presents an unreasonable risk of harm, the trier-of-fact must balance the gravity and risk of harm against the individual and social rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier-of-fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others.

Whether a risk is unreasonable is a matter wed to the facts and must be determined in light of facts and surrounding circumstances of each particular case.

Bearing these principles in mind as well as the facts presented by the parties in connection with the Motion for Summary Judgment, we conclude the trial court erred in granting summary judgment. The plaintiff presented circumstantial evidence regarding the cause of her fall; if the trial court found that she had not proved the cause of her fall, that determination required the court to make a factual finding that was inappropriate on Motion for Summary Judgment. Similarly, if the trial court found that she had sufficiently proven the cause of her fall, but had failed to show that she could prove the expansion joint was unreasonably dangerous, that was a factual determination **unsuitable** on a Motion for Summary Judgment." (*Bouquard* at Pg. 136.)

Moving beyond simple motions for summary judgment, the facts of *Buchignani v. Lafayette Insurance Company*, 938 So.2d 1198 (La. App. 2nd 3rd Cir. 2006) showed that cases such as Ms. Thompson's are not only cases that easily defeat summary judgment, they are cases that are easily won under similar circumstances. In that case, the patron who tripped over an expansion joint was cast with thirty percent (30%) of the fault in the form of comparative negligence and the defendant seventy percent (70%). The Court of Appeal affirmed the allocation of fault.

In *McAdams v. Willis Knighten Medical Center*, 862 So.2d 1186 (La. App. 2nd Cir. 2003), the trial court had granted summary judgment in favor of the defendant where the visitor in the parking lot tripped over an expansion joint where there was an unevenness in the parking lot.

The Court of Appeal reversed and remanded.

The facts in this case show that the plaintiff tripped in an area that was not actually inspected by the defendant's safety expert.

However, the plaintiff shows that on the day of her accident, it was raining, the area where she fell had a puddle of water that covered or obfuscated the hole, and she tripped sustaining a very complex fracture to her arm.

When she and her husband were able to revisit the area after the water cleared, she appreciated the crack in the expansion joint being as big as a gila monster.

Comparing this situation to the cases cited above, the defendant is clearly not entitled to a Motion for Summary Judgment.

Instead, the "questions of fact" and the "weighing of utility versus risk of harm" is an issue designed for the jury that the defendant requested in this matter.

## CONCLUSION

The defendant brings a Motion for Summary Judgment based on misplaced safety expert evidence inspecting a site of the parking lot that was not the cause of the fall.

Had the defendant visited the place where the fall actually occurred, the defendant would have revealed a defect in the expansion joint which is a hazard actionable under Louisiana law.

Accordingly, it is prayed that the Court deny the Motion for Summary Judgment, reserving the issues of liability and damages for the ultimate trier-of-fact.

Respectfully Submitted:

_____
R. SCOTT ILES, #19936
P.O. Box 3385 (70502)
1200 West University Avenue
Lafayette, LA 70506
Telephone: 337/ 234-8800
Fax: 337/234-4080
Rsiles@bellsouth.net
Attorney for the plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of September, 2008, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to: William H. Eckert by operation of the court's electronic filing system.

Respectfully submitted:

_____
R. SCOTT ILES, #19936
P.O. Box 3385 (70502)
1200 West University Avenue
Lafayette, LA 70506
Telephone: 337/ 234-8800
Fax: 337/234-4080
Rsiles@bellsouth.net
Attorney for the plaintiff